OPINION
{¶ 1} Plaintiffs-Appellants, Stacy and Anthony Armaly (hereinafter jointly referred to as "Appellants"), appeal a judgment of the Auglaize County Court of Common Pleas, granting summary judgment to Defendant-Appellee, the City of Wapakoneta, Ohio ("City"), and summary judgment in part to Defendant-Appellee, David Harrison (hereinafter referred to jointly as "Appellees"). On appeal, Appellants assert that the trial court erred in refusing to consider depositions submitted by Appellants and that the trial court erred in granting summary judgment to the City and summary judgment in part to Harrison. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} Since August of 1986, Stacy Armaly has been employed by the City of Wapakoneta Police Department as a dispatcher. From 1988 until May 2, 2002, Harrison was the Chief of Police for the City of Wapakoneta Police Department. Since the 1980s, Mrs. Armaly and Harrison had worked together during the day shift and maintained what Mrs. Armaly described as a working friendship. According to Mrs. Armaly, Harrison was friendlier to her than to others in the office, she and Harrison maintained a friendship outside of the office and they had attended work functions together. Additionally, she stated that she and Harrison would talk during work hours, that she would try to help Harrison clean his office, spending hours alone with Harrison in his office, and that she and Harrison would exchange back rubs on occasion. Mrs. Armaly stated that she was never offended by these actions of Harrison.
 {¶ 3} Mrs. Armaly also stated that she and Harrison exchanged emails often. Several emails were entered into evidence. Of the emails entered into evidence, many were from Harrison to Mrs. Armaly and several were from Mrs. Armaly back to Harrison. Mrs. Armaly identified the emails admitted into evidence and stated that she had written those that were sent from her email address.
 {¶ 4} According to Mrs. Armaly, some of the emails sent by Harrison made her feel uncomfortable because he would go into detail about the problems he was having with depression. Additionally, she stated that Harrison would talk with her about his problems with depression, which also made her feel uncomfortable. Mrs. Armaly was not able to remember any specific conversations or statements by Harrison, regarding his depression, that made her feel uncomfortable.
 {¶ 5} As some point in the late 1990's Harrison told Mrs. Armaly that he had feelings for her and that he loved her. According to Mrs. Armaly, while she did not remember exactly what she told Harrison, she explained that she was happily married and not interested in pursuing a relationship with him. Mrs. Armaly also stated that she did talk to her direct supervisor, Lieutenant Lamar, about Harrison's comment. However, Mrs. Armaly stated that she told Lieutenant Lamar that she did not want him to investigate or do anything further regarding Harrison's comment.
 {¶ 6} After that time, Harrison and Mrs. Armaly maintained their working friendship. Additionally, Mrs. Armaly stated that her interactions with Harrison were not affecting her job performance during this time.
 {¶ 7} On May 2, 2002, Denise Kohler, another dispatcher at the Wapakoneta Police Department, found a tape recorder in the women's restroom. After the tape recorder was found, Kohler informed her superiors. According to Mrs. Armaly after the tape recorder was found, Harrison called her into his office and again told her he loved her. Additionally, Mrs. Armaly stated that Harrison told her that he had put the tape recorder in the restroom and that it had been meant for Mrs. Armaly. At that point Mrs. Armaly left Harrison's office.
 {¶ 8} Later that same day, Harrison tendered a letter of retirement to Wapakoneta City Mayor Donald Wittmer. Subsequently, Mayor Wittmer and Wapakoneta Safety Director, Rex Katterheinrich, contacted the Bureau of Criminal Investigation ("BCI"), in order to start an investigation into the tape record and Harrison. According to Mayor Wittmer, the investigation was pursued based upon the tape recorder being found and Harrison's sudden retirement.
 {¶ 9} Through the BCI investigation it was discovered that Harrison had edited pornographic pictures on his computer. Of the edited pictures found, two pictures included Mrs. Armaly. In the first picture, Harrison had inserted Mrs. Armaly's head into a pornographic picture. In the second picture, Harrison had inserted a picture of himself naked with an erection standing directly in front of Mrs. Armaly. Mrs. Armaly stated that she did not pose for these pictures and that she had no knowledge of these pictures prior to the BCI investigation. These pictures were viewed by some members of the Wapakoneta Police Department after the BCI investigation. Denise Kohler had received a copy of the BCI report as part of the discovery for her own lawsuit against Harrison and City and had shared the contents of the report, which included the pictures, with some members of the Wapakoneta Police Department.
 {¶ 10} Additionally, during the BCI investigation, pictures that Harrison had taken of himself in the women's locker room were discovered. These pictures depicted Harrison naked and masturbating in front of one of the lockers. Harrison stated that he had taken these pictures of himself and that he was standing in front of Mrs. Armaly's locker.
 {¶ 11} In January of 2004, Appellants filed a complaint against Appellees. Appellants' complaint asserted the following: Count 1 alleged sexual harassment and hostile work environment in violation of R.C. 4112.02(A) and 4112.99 against the City for permitting Mrs. Armaly to be exposed to a hostile, harassing, offensive and intimidating work environment; Count 2 alleged both Harrison's and the City's conduct constituted common law sexual harassment; Count 3 alleged intentional and negligent infliction of emotional distress against both Harrison and the City; Count 4 alleged invasion of privacy in violation of R.C. 2305.09(D) by Harrison and by the City through respondeat suprerior; Count 5 alleged common law invasion of privacy against Harrison and by the City through respondeat superior; Counts 6 and 7 alleged negligent retention and supervision by the City, based upon the acts or omissions by Harrison; and, Count 8 alleged loss of consortium on behalf of Mr. Armaly.
 {¶ 12} After several months of discovery, both the City and Harrison filed separate motions of summary judgment in April of 2005. Harrison filed a supplemental motion of summary judgment in August of 2005. In September of 2005, Appellants filed their motion in opposition to Appellees' motions for summary judgment. Additionally, Appellants filed the depositions of Mayor Wittmer, Lieutenant Barry Truesdale, Special Agent Lee Lerussi and the continued deposition of Harrison. The Auglaize County Clerk of Courts refused to accept those depositions, because the copies that were filed with the court had not been signed by the court reporter. The next day Appellants filed an amended notice of filing depositions, and proper depositions were filed within days. Appellees did not file any objections to the Appellants' amended filing. The trial court refused to consider the depositions filed by Appellants in its consideration of the motion for summary judgment.
 {¶ 13} In November of 2005, the trial court granted the City's motion for summary judgment for all claims set forth in Appellants' complaint. Additionally, the trial court granted Harrison's motion for summary judgment for Counts 1 and 2 (sexual harassment and hostile work environment pursuant to R.C.4112.02(A) and 4112.99) and in part on Count 3 (negligent infliction of emotional distress).
 {¶ 14} The trial court did not grant summary judgment regarding Appellants' claims against Harrison in part on Count 3 (intentional infliction of emotional distress), Count 4 (invasion of privacy pursuant to R.C. 2305.09(D)) and Count 5 (common law invasion of privacy). Additionally, the trial court did not grant summary judgment for Harrison with regard to Count 8 (loss of consortium) arising out of the surviving claims.
 {¶ 15} It is from this judgment Appellants appeal, presenting the following assignments of error for our review.
 Assignment of Error No. I The Trial Court Committed Prejudicial Error in Refusing toConsider Evidence Submitted by Appellants in Support of TheirOpposition to Summary Judgment.
 Assignment of Error No. II The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim for Sexual Harassment against theCity of Wapakoneta under R.C. 4112.02 et seq.
 Assignment of Error No. III The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim for Sexual Harassment againstHarrison under R.C. 4112.02 et seq.
 Assignment of Error No. IV The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim against the City of Wapakoneta forCommon Law Sexual Harassment.
 Assignment of Error No. V The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim against Harrison for Common LawSexual Harassment.
 Assignment of Error No. VI The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim for Intentional Infliction ofEmotional Distress against the City of Wapakoneta.
 Assignment of Error No. VII The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim Negligence Infliction of EmotionalDistress Against the City of Wapakoneta.
 Assignment of Error No. VIII The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim for Negligent Infliction ofEmotional Distress against Harrison.
 Assignment of Error No. IX The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim for Invasion of Privacy against theCity of Wapakoneta.
 Assignment of Error No. X The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claims for Negligent Retention andNegligent Supervision against the City of Wapakoneta.
 Assignment of Error No. XI The Trial Court Committed Reversible Error in Granting SummaryJudgment on Appellant's Claim for Loss of Consortium.
 Assignment of Error No. I {¶ 16} In the first assignment of error, Appellants assert that the trial court erred in refusing to consider the depositions submitted by Appellants in support of their motion in opposition to Appellees' motions for summary judgment.
 {¶ 17} Civ.R. 56(C) controls the materials that the court may consider when it determines whether there are any triable issues of fact for the purposes of summary judgment. Bowmer v.Dettelbach (1996), 109 Ohio App.3d 680, 684. The rule directs the court to consider only "the pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C). Where the opposing party fails to object to the admissibility of the evidence under Civ.R. 56, the court may, but is not required to consider such evidence when it determines whether summary judgment is appropriate. The State ex rel. The V Companies v.Marshall (1998), 81 Ohio St.3d 467, 473; Bowmer,109 Ohio App.3d at 684. It is well within the trial court's discretion to ignore documents that do not comply with Civ.R. 56(C). Biskupichv. Westbay Manor Nursing Home (1986), 33 Ohio App.3d 220, 222.
 {¶ 18} In the case sub judice, Appellants filed several depositions with their motion in opposition of Appellees' motions for summary judgment. Those depositions did not include signed copies of the court reporter's certification. The next day, which was the date set by the court for all materials to be filed, Appellants filed an amended notice of filing depositions. Proper depositions were filed the following Monday, and Appellees never objected to Appellants' amended filing.
 {¶ 19} In Bell v. Holden Surveying, Inc., 7th Dist. No. 01 AP 0766, 2002-Ohio-5018, the Seventh District addressed a similar issue. In Bell, the plaintiff included with his motion in opposition to the defendant's motion for summary judgment depositions that did not contain reporter's certification. Id. at ¶ 17. While the defendant's in Bell did not object, the trial court refused to consider those depositions in ruling on the motion for summary judgment. Id.
 {¶ 20} The Bell Court held the following:
[I]t is within the trial court's discretion to considernonconforming evidence when there is no objection. Therefore, atrial court is permitted to sua sponte determine that thedocumentation attached to the summary judgment is not inconformity with the requirements of Civ.R. 56(C). When a trialcourt determines that it will not consider nonconformingevidence, that decision is not an error unless the trial courtacted in an unreasonable, unconscionable, or arbitrary manner.
Id. at ¶ 22 (citations omitted), citing to The V Companies,81 Ohio St.3d at 473.
 {¶ 21} In reaching its holding, the Seventh District, noted that without certification alleged depositions are not a "deposition" for purposes of Civ.R. 56(C). Id. at ¶ 20, citing toTrimble-Weber v. Weber (1997), 119 Ohio App.3d 402, 407. Essentially, such filings were deposition transcripts and are not a type of evidence enumerated in Civ.R. 56(C). Id. Thus, the Seventh District found that a trial court was not required to consider such depositions in ruling on a motion for summary judgment. Id.
 {¶ 22} The Seventh District also went on to reject the idea that when a party does not object to the introduction of evidence that is not in conformity with Civ.R. 56(C), the trial court should consider that evidence. Id. at ¶ 21, citing to Gaumountv. Emery Air Freight Corp. (1989), 61 Ohio App.3d 277, 287. TheBell Court specifically stated that "[w]hile this statement [that the trial court may consider evidence that is not in conformity with Civ.R. 56(C)] is accurate, the [plaintiffs] want this court to extend this statement to the point where if a party does not object, the trial court errs when it fails to consider the evidence that is not in conformity to Civ.R. 56(C)." Id. at ¶ 21. The Seventh District correctly declined to adopt that view of Civ.R. 56.
 {¶ 23} As noted above, the depositions filed by Appellants were not certified within the time set forth by the trial court. While Appellants did make timely strides to fix the problem, properly certified depositions were filed out of rule. Following the Bell Court's logic, we will not find the trial court abused its discretion simply because Appellees did not object. A trial court may consider the nonconforming evidence; however, it is not required to consider such evidence. Bell, 2002-Ohio-5018, at ¶ 23. Accordingly, we cannot find that the trial court abused its discretion by refusing to consider Appellants' depositions.
 {¶ 24} Furthermore, upon review of the depositions filed by Appellants, we cannot find those depositions contain any information that would raise an issue of material fact. Thus, even if we had found that the trial court erred in excluding those depositions, any such error would be harmless. Accordingly, the first assignment of error is without merit.
 Standard of Review for Summary Judgment {¶ 25} Because assignments of error two through eleven pertain to summary judgment, the following standard of review will be applicable to all.
 {¶ 26} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distr. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶25, citing State ex rel. Cassels v. Dayton City School Dist. Bd.Of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the movant is entitled to judgment as a matter of law. Civ.R. 56(C); Horton v. Harwick ChemicalCorp., 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-59,1992-Ohio-95.
 {¶ 27} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. Stateex rel. Burnes v. Athens City Clerk of Courts,83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also, Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Assignments of Error Nos. II III {¶ 28} In the second assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claim of hostile work environment pursuant to R.C. 4112.02(A) and4112.99 against the City. In the third assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claim of hostile work environment pursuant to R.C. 4112.02(A) and 4112.99 against Harrison. Because these assignments of error are interrelated, we will address them together.
 {¶ 29} R.C. 4112.02(A) makes it an unlawful discriminatory practice for an employer to discriminate against an employee because of the employee's gender with regard to hiring, tenure, terms, conditions, or privileges of employment, or any other matter related to employment. A violation of R.C. 4112.02(A) can be established by showing a "hostile-environment" or harassment that may not affect economic benefits, but has the purpose or effect of creating a hostile or abusive working environment.Hampel v. Food Ingredients Specialties, Inc. (2000),89 Ohio St.3d 169.
 {¶ 30} In order to establish a claim of hostile-environment sexual harassment, Appellants must show the following:
(1) that the harassment was unwelcome, (2) that the harassmentwas based on sex, (3) that the harassing conduct was sufficientlysevere or pervasive to affect the `terms, conditions, orprivileges of employment, or any matter directly or indirectlyrelated to employment,' and (4) that either (a) the harassmentwas committed by a supervisor, or (b) the employer, through itsagents or supervisory personnel, knew or should have known of theharassment and failed to take immediate and appropriatecorrective action.
 Hampel, 89 Ohio St.3d at para. two syllabus of the Court.
 {¶ 31} In order to determine whether an environment is sufficiently hostile to warrant a finding of sexual harassment this Court examines the totality of the circumstances, which include:
[T]he frequency of the discriminatory conduct; its severity;whether it is physically threatening or humiliating, or a mereoffensive utterance; and whether it unreasonably interferes withan employee's work performance. The effect on the employee'spsychological well-being is, of course, relevant to determiningwhether the plaintiff actually found the environment abusive. Butwhile psychological harm, like any other relevant factor, may betaken into account, no single factor is required. Harris v.Forklift Systems (1993), 510 U.S. 17, 23, 114 S.Ct. 367. Additionally, we note that "the ordinary tribulations of the work place, such as sporadic use of abusive language, gender-related jokes, and occasional teasing" will not constitute a hostile work environment. Faragher v. City of Boca Raton (1998),524 U.S. 775, 788, 118 S.Ct. 2275.
 {¶ 32} Considering the third assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claim of hostile-environment sexual harassment against Harrison. Upon review of the original complaint, Appellants failed to include Harrison within Count 1, which alleged with hostile-environment sexual harassment pursuant to R.C. 4112.02(A) and 4112.99. Count 1 of Appellants complaint only alleges discrimination pursuant to R.C. 4112.02(A) and 4112.99 against the City. Furthermore, there is no amended complaint within the record. We acknowledge that the trial court did grant summary judgment in Harrison's favor on this issue; however, because Count 1 is not pled against Harrison, we will not consider this issue on appeal. Accordingly, the third assignment of error is overruled.
 {¶ 33} Turning to the second assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claim of hostile-environment sexual harassment against the City. This claim was properly pled in Appellants' complaint. However, upon review of the evidence, we find that Appellants' claim fails to satisfy the first and third enumerated elements.
 {¶ 34} As noted above the first element required is that the harassment was unwelcome. According to Mrs. Armaly, Harrison's incessant emails as well as his vocalizing his affection for her were the root causes of the claim in Count 1. However, the numerous emails submitted into the record as well as Mrs. Armaly's own deposition testimony clearly show that Mrs. Armaly did not rebuff Harrison. Several of the emails submitted show that Mrs. Armaly answered Harrison's emails, referring to Harrison by various pet names, showing they did maintain a friendship. Additionally, Mrs. Armaly stated that she would help Harrison in his office alone for several hours at a time. Based upon Mrs. Armaly's own testimony, she neither took steps to discourage Harrison's behavior nor did she want Lieutenant Lamar to pursue an investigation after Harrison had vocalized his affection for her. Upon review of the record, it is clear that Harrison's actions were not unwelcome.
 {¶ 35} Furthermore, Appellants have failed to satisfy the third element above, which requires a finding that "the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.'" Hampel,
89 Ohio St.3d at para. two syllabus of the Court. To satisfy this element "[t]he employee must show that the abuse was either severe enough or pervasive enough to show that a condition of her `work environment had been affected.'" Payton v. ReceivablesOutsourcing, Inc., 163 Ohio App.3d 722, 2005-Ohio-4978, Burnettv. Tyco Corp. (2000), 203 F.3d 980, 984. While the emails sent by Harrison were frequent, Mrs. Armaly stated during her deposition that Harrison's actions were not interfering with her ability to do her job. Additionally, Mrs. Armaly stated that her job performance was not affected by Harrison's affection for her. Accordingly, Appellants are unable to satisfy this prong as well.
 {¶ 36} Having found that Appellants are unable to satisfy either the first or third elements required to prove a claim of hostile-environment sexual harassment against the City, the second assignment of error is overruled.
 Assignments of Error Nos. IV V {¶ 37} In the fourth assignment of error, Appellants assert that the trial court erred in granting summary judgment on their claim for common law sexual harassment against the City. In the fifth assignment of error, Appellants assert that the trial court erred in granting summary judgment on their claim for common law sexual harassment against Harrison. Because these claims are interrelated we will address them together.
 {¶ 38} In Kerans v. Porter Paint Company (1991),61 Ohio St.3d 486, the Ohio Supreme Court recognized that "[t]he workers' compensation statute does not provide the exclusive remedy for claims based upon sexual harassment in the workplace." Id. at para. one syllabus of the Court. Thus, the Court held that:
Where a plaintiff brings a claim against an employerpredicated upon allegations of workplace sexual harassment by acompany employee, and where there is evidence in the recordsuggesting that the employee has a past history of sexuallyharassing behavior about which the employer knew or should haveknown, summary judgment may not be granted in favor of theemployer * * *.
Id. at para. two syllabus of the Court.
 {¶ 39} In order to prevail under Kerans, a plaintiff must first prove that sexual harassment has in fact taken place. Because Kerans failed to delineate elements for common law sexual harassment, several Ohio courts have chosen to adopt the same elements required under federal Title VII sexual harassment actions. See Barney v. Chi Chi's, Inc. (1992),84 Ohio App.3d 40; Doe v. Doe Corp. One (June 5, 1998), 6th Dist. No. L-97-1136; Thompson v. Western Auto Supply Co. (May 8, 1996), 5th Dist. No. 95 CA-E-05-030.
 {¶ 40} As noted above, in order to establish a claim for sexual harassment, Appellants must show the following:
(2) that the harassment was unwelcome, (2) that the harassmentwas based on sex, (3) that the harassing conduct was sufficientlysevere or pervasive to affect the `terms, conditions, orprivileges of employment, or any matter directly or indirectlyrelated to employment,' and (4) that either (a) the harassmentwas committed by a supervisor, or (b) the employer, through itsagents or supervisory personnel, knew or should have known of theharassment and failed to take immediate and appropriatecorrective action.
 Hampel, 89 Ohio St.3d at para. two syllabus of the Court.
 {¶ 41} Based upon our analysis above, Appellants are unable to satisfy the first and third elements necessary to establish a claim of sexual harassment. Having found that no sexual harassment took place, it is unnecessary to proceed with aKerans analysis. Accordingly, the fourth and fifth assignments of error are overruled.
 Assignment of Error No. VI {¶ 42} In the sixth assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claim of intentional infliction of emotional distress against the City.
 {¶ 43} The trial court did not grant summary judgment for Appellants' claim of intentional infliction of emotional distress against Harrison. Therefore, Appellants' claim on appeal is that the City's motion for summary judgment should also fail under the theory of respondeat superior.
 {¶ 44} In order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Cooke v. MontgomeryCty, 158 Ohio App.3d 139, 2004-Ohio-3780, ¶ 17. "Moreover, where the tort is intentional, the behavior giving rise to the tort must be `calculated to facilitate or promote the business for which the servant was employed.'" Id., citing Byrd v. Faber
(1991), 57 Ohio St.3d 56, 58; Little Miami RR. Co. v. Wetmore
(1869), 19 Ohio St. 110, 132.
 {¶ 45} In Byrd, the Ohio Supreme Court stated that "an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business."57 Ohio St.3d at 59. An employee's conduct is within the scope of his employment if it is the type of action which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master. Cooke, 158 Ohio App.3d at ¶ 20; see, also,Anderson v. Toeppe (1996), 116 Ohio App.3d 429, 436.
 {¶ 46} Upon review of the evidence, it is clear that Appellants are unable to satisfy these requirements. While a question of fact has been found to exist as to whether Harrison's actions constitute outrageous conduct causing severe emotional distress, it is clear that any of the alleged actions by Harrison were outside the scope of his employment. The alleged actions may have taken place on City grounds (i.e. at the Wapakoneta Police Department); however, that alone does not satisfy a finding that such actions facilitated or promoted his employment.
 {¶ 47} Accordingly, the sixth assignment of error is overruled.
 Assignments of Error Nos. XII XIII {¶ 48} In the seventh assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claim of negligent infliction of emotional distress against the City. In the eighth assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claim of negligent infliction of emotional distress against Harrison. Because these assignments of error are interrelated, we will address them together.
 {¶ 49} Although Ohio does recognize the tort of negligent infliction of emotional distress in the work place, Kerans,61 Ohio St.3d 486, the Ohio Supreme Court delineated the following restrictions on this tort in High v. Howard (1992),64 Ohio St.3d 82, "Ohio courts have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." Id. at 85-86, overruled on other grounds, Gallimore v. Children's Hosp. (1993),67 Ohio St.3d 244. Additionally, in Dobran v. Franciscan Med. Ctr. (2004),102 Ohio St.3d 54, 59, the Ohio Supreme Court declined to extend the law in this area, where it was required to address the issue of negligent infliction of emotional distress.
 {¶ 50} Upon review of the evidence, Appellants have failed to show that Mrs. Armaly was either the bystander to an accident or was in fear of physical consequences to her own person. Accordingly, Appellants' claims of negligent infliction of emotional distress against both Harrison and the City must fail as a matter of law. Thus, the seventh and eighth assignments of error are overruled.
 Assignment of Error No. IX {¶ 51} In the ninth assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claim of invasion of privacy against the City.
 {¶ 52} The trial court did not grant summary judgment for Appellants' claims of invasion of privacy against Harrison. Thus, again, Appellants' claim is based upon the theory of respondeat superior. Based upon the above analysis in Assignment of ErrorNo. VI, it is clear that the actions of Harrison alleged to constitute an invasion of Mrs. Armaly's privacy in no way facilitated or promoted the City or Wapakoneta Police Department. Any such actions are beyond the scope of Harrison's employment. According, Appellants are unable to establish liability on the party of the City through the doctrine of respondeat superior. Thus, the ninth assignment of error is overruled.
 Assignment of Error No. X {¶ 53} In the tenth assignment of error, Appellants assert that the trial court erred in granting summary judgment for their claims of negligent retention and supervision against the City.
 {¶ 54} In order to prove a claim for negligent supervision and retention, Appellants must show the following: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in * * * retaining the employee as the proximate cause of plaintiff's injuries." Steppe v. Kmart Stores (1999), 136 Ohio App.3d 454,465. A plaintiff must also show that the employee's act was reasonably foreseeable. Wagoner v. United Dairy Farmers, Inc.
(Nov. 17, 2000), 1st Dist. No. C-990767. An act is reasonably foreseeable if the employer knew or should have known of the employee's "propensity to engage in similar criminal, tortuous, or dangerous conduct." Id.
 {¶ 55} Upon review of the evidence, we cannot find that the City knew or should have known of Harrison's propensity to engage in the alleged actions. Mayor Wittmer, Lieutenant Truesdale and Current Police Chief David Webb did all testify that there had been complaints within the community about Harrison not showing enough of a public presence. Additionally, Chief Webb also stated that Harrison was in his office a majority of the time and that sometimes the lights were out. However, even when considering such evidence in the light most favorable to the nonmoving party, this evidence alone does not raise a material issue of fact as to the City's knowledge of Harrison's propensity to engage in the type of conduct being alleged by Appellants. Accordingly, the tenth assignment of error is overruled.
 Assignment of Error No. XI {¶ 56} In the eleventh assignment of error, Appellants assert that the trial court erred granting summary judgment for Mr. Armaly's claim of loss of consortium against the City. Having found that the trial court did not err in granting summary judgment on any of the above claims for the City, Appellants' final assignment of error is without merit.
 {¶ 57} Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Bryant, P.J. and Cupp, J., concur.