[Cite as *Hudson v. Flores*, 2016-Ohio-253.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

JEFFREY S. HUDSON,

    PLAINTIFF-APPELLANT,            CASE NO. 1-15-42

    v.

STEVEN FLORES, ET AL.,               **O P I N I O N**

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV20140503

**Judgment Affirmed**

Date of Decision:    January 25, 2016

**APPEARANCES:**

    *Jason N. Flower* for Appellant

    *Steven G. Carlino and Joshua C. Berns* for Appellee, Jay Sairam,
    Inc., dba Imperial Inn

    *John R. Chlysta* for Intervening Appellee, Acuity, A Mutual Ins. Co.

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Jeffrey Hudson, appeals the decision of the Court of Common Pleas of Allen County granting summary judgment in favor of Defendants-Appellees, Jay Sairaim, Inc. and Imperial Inn (collectively "the Inn"), and intervening Plaintiff/Third-Party Defendant-Appellee, Acuity, a Mutual Insurance Company ("Acuity"). On appeal, Hudson argues that the trial court erred by determining (1) that Defendant, Steven Flores,[1] committed a battery; (2) that Flores was acting outside the scope of his employment with the Inn during the incident with Hudson; and (3) that the Inn was not liable for Flores's actions under the theory of respondeat superior. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} This case stems from an incident that occurred on July 27, 2013 between Flores and Hudson. The following facts are undisputed. Hudson lived at the Imperial Inn for about three months during the middle of 2013. A couple of nights before July 27, 2013, Hudson was socializing with Flores's girlfriend, Debra Mauri, in his hotel room. Mauri would occasionally stop by his room, and the two would talk and drink a few beers. During this visit, Hudson believed that Mauri had stolen a 20-dollar bill. On the morning of July 27, 2013, Hudson approached Flores, an employee of the Inn, who was in the process of cleaning

---

[1] Flores is not a party in this appeal.

one of the rooms. At that time, Hudson accused Mauri of stealing his 20 dollars and asked Flores to give him the money back. Flores immediately stopped what he was doing and walked over to Hudson. Again, Hudson accused Mauri of stealing the money and demanded that Flores pay. In response, Flores pushed Hudson in an attempt to create some space between the two individuals. As a result, Hudson tripped and fell backward. Flores quickly went over to Hudson and grabbed a hold of Hudson's arm to help him back to his feet. While helping Hudson up, the two men heard an audible crack come from Hudson's arm. It was later determined that Hudson endured a broken arm as a result of the incident.

{¶3} After the incident was over, Hudson approached the Inn's main desk where he informed the owner, Arati Patel, that one of her employees had just injured him. Patel, who only understands a limited amount of the English language, told Hudson that if he did not like it there, then he could leave.

{¶4} On August 7, 2014, Hudson filed a complaint against Flores and the Inn, alleging six claims for relief. Hudson alleged two claims against Flores, individually: negligence and negligent infliction of emotional distress. The remaining four claims alleged liability on the part of the Inn for respondeat superior (two claims) and negligent hiring (two claims).

{¶5} The Inn filed its answer on September 25, 2014, denying any liability towards Hudson. As one of its defenses, the Inn argued that it was not liable

because Flores was not acting within the scope of his employment when he pushed Hudson and when Flores helped Hudson back to his feet.

{¶6} On October 14, 2014, Acuity filed a motion to intervene. In its motion, Acuity argued that it had issued commercial-liability insurance to the Inn and that Hudson's claims were not covered under the policy.

{¶7} Flores filed his answer on October 24, 2014.

{¶8} The trial court granted Acuity's motion to intervene on January 9, 2015.

{¶9} Acuity filed an intervenor complaint for declaratory judgment against Flores and the Inn on January 13, 2015. In its complaint, Acuity alleged that it owed no duty to defend and indemnify Flores and the Inn in the lawsuit. The Inn filed its answer to Acuity's complaint on February 19, 2015.

{¶10} On April 29, 2015, the Inn filed a motion for summary judgment on Hudson's claims. Specifically, the Inn argued that the record clearly established that Flores was not acting within the scope of his employment when he injured Hudson, thus no genuine issue of material fact existed and the Inn was entitled to judgment as a matter of law on Hudson's claims for respondeat superior. The Inn also argued that it was entitled to judgment as a matter of law on the negligent hiring claims because the record established that it had no actual or constructive notice of any previous incompetence of Flores.

{¶11} Acuity filed a motion for summary judgment on its intervenor complaint on May 8, 2015. Acuity argued that it was entitled to judgment as a matter of law because there was no genuine issue of material fact that Flores was not acting within the scope of his employment when he pushed Hudson and when he helped Hudson to his feet. According to Acuity, the insurance policy defined "insured" as employees, but only for acts within the scope of their employment. Further, Acuity argued that Flores never filed an answer to its complaint, subjecting him to a default judgment. Finally, Acuity argued that it had no duty to indemnify the Inn because the Inn could not be subject to liability in the case.

{¶12} Hudson filed his response to both motions for summary judgment on June 10, 2015. In his response, Hudson argued that genuine issues of material fact existed as to whether Flores was acting within the scope of his employment, whether Flores went on a frolic or detour, and whether the Inn should have known about Flores's temper.

{¶13} On June 17, 2015, the trial court granted both the Inn and Acuity's motions for summary judgment. Specifically, the court found that although Hudson alleged claims for negligence, Flores's conduct constituted the intentional tort of battery. Because of this, the Inn could only be found liable if Flores's behavior was reasonably calculated to facilitate or promote the Inn's business. The court found that the record clearly established that Flores's actions in no way

facilitated or promoted the Inn's business, and therefore the Inn was entitled to judgment as a matter of law as to both respondeat superior claims. As to the negligent hiring claims, the court found that Hudson could not establish the element of proximate causation, and therefore the Inn was entitled to judgment as a matter of law. The court found that Acuity was entitled to judgment as a matter of law because Flores was not an "insured" party for the purposes of the policy. Although the claims against Flores remained pending, the court found that there was no just reason for delay pursuant to Civ.R. 54(B), making its decision a final appealable order.[2]

{¶14} Hudson filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE COURT ERRED IN DETERMINING THAT FLORES' ACTIONS CONSTITUTED AN INTENTIONAL TORT OF BATTERY.**

*Assignment of Error No. II*

**THE COURT ERRED WHEN THEY [SIC] DETERMINED THAT FLORES WAS ACTING OUTSIDE THE SCOPE OF HIS EMPLOYMENT DURING THE ALTERCATION WITH HUDSON.**

---

[2] Although having the phrase "no just reason for delay" is not always sufficient to constitute a final appealable order under Civ.R.54(B), we find that the court's decision is a final appealable order.

*Assignment of Error No. III*

**THE COURT ERRED WHEN THEY [SIC] DETERMINED DEFENDANT-APPELLEE IMPERIAL WAS NOT LIABLE UNDER THE THEORY OF *RESPONDEAT SUPERIOR*. (EMPHASIS SIC.)**

{¶15} Due to the nature of Hudson's assignments of error, we elect to address them together.

{¶16} Additionally, it appears, from the arguments made in his brief, Hudson is only challenging the court's determination of the respondeat superior claims. Upon review of his brief, we cannot find an argument challenging the court's disposition of Hudson's negligent hiring claims. Therefore, we will only address the respondeat superior claims.

*Assignments of Error Nos. I, II, & III*

{¶17} In his first, second, and third assignments of error, Hudson argues that the trial court erred by determining that Flores was acting outside the scope of his employment and then finding that the Inn could not be liable under the theory of respondeat superior. We disagree.

{¶18} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton*

*Heidelberg Distrib. Co.*, *Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id*. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶19} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id*. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id*.; Civ.R. 56(E).

{¶20} In order for an employer to be liable under the doctrine of respondeat superior, the employee's tortious conduct must be committed within the scope of his employment. *Cooke v. Montgomery Cty.*, 158 Ohio App.3d 139, 2004-Ohio-3780, ¶ 17 (2d Dist.). "An employee's conduct is within the scope of his employment if it is the type of action which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master." *Armaly v. City of Wapakoneta*, 3d Dist. Auglaize No. 2-05-45, 2006-Ohio-3629, ¶ 45, citing *Cooke* at ¶ 20.

{¶21} "Moreover, where the tort is intentional, the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed.' " *Id.*, quoting *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (1991). An employer can also be held liable for an employee's intentional acts when the employer ratifies that action, making the action its own. *See Amato v. Heinika Ltd.*, 8th Dist. Cuyahoga No. 84479, 2005-Ohio-189, ¶ 5. To do so, an employer must possess knowledge of the facts. *Morr v. Crouch*, 19 Ohio St.2d 24 (1969), syllabus ("Negligence or inaction alone is insufficient to show ratification of an agent's unauthorized act, but ratification must follow knowledge of the facts."). Finally, an integral part of ratification is that the employer derived a benefit from the employee's actions. *Byrd* at 59.

{¶22} The record clearly established that Flores was hired by the prior owners of the Inn to perform every day maintenance and housekeeping for the Inn. Specifically, Flores testified, "Okay. Housekeeping involved cleaning the rooms once the people moved out of them. Maintenance involved anything that might have been broken while the people were in the room." (Docket No. 38, p. 19). This did not change once the Patels bought the Inn. When asked to describe what she expected Flores to do around the Inn, Patel stated that Flores was responsible for cleaning the Inn's guest rooms and doing the laundry. Patel also testified that she will occasionally have Flores speak to a tenant that has not been paying rent. Patel stated that she has only asked him to help a couple of times. Flores confirmed this at his deposition. Flores admitted that he had to call police to the scene on several occasions to ensure that the confrontation did not escalate to physical violence. He also agreed that part of his duties included making sure that all the guests remained safe while at the Inn. Specifically, Flores testified that he has placed "wet floor" signs, shoveled snow, and dumped salt on the sidewalks during the winter months.

{¶23} Hudson argues that Flores's actions were committed within the scope of his employment with the Inn because (1) Flores was cleaning a room while the incident occurred; (2) Hudson thought that an employee, Mauri, had stolen his 20 dollars and was reporting the theft to another employee; and (3) Flores was

responsible for making sure all guests, including Hudson, were safe. Under any of these theories, Hudson's argument lacks any merit.

**{¶24}** Regarding Hudson's first argument, a finding that an employee's tortious conduct took place at his place of his employment is not, by itself, sufficient to hold an employer responsible under a theory of respondeat superior. *See Armaly*, 2006-Ohio-3629 at ¶ 46. Although the incident occurred on the Inn's grounds, both Hudson and Flores testified that Flores had stopped cleaning the room and approached Hudson after Hudson accused Mauri of the theft. The record also indicated that Flores had occasionally been asked by Patel to talk with residents that were failing to pay rent or were being evicted. Reading this fact in the light most favorable to Hudson, there is nothing to suggest that Hudson and Flores were talking about Hudson's failure to pay rent. On the contrary, Hudson initiated the conversation when he accused Mauri of the theft, and the substance of the conversation pertained solely to the alleged theft.

**{¶25}** Second, nothing in the record suggests that Hudson approached Flores, because Flores was an employee of the Inn, to report that someone had stolen his money. Hudson never testified that he went to talk to Flores because he was an employee. Rather, Hudson testified that he went to talk to Flores because he knew that Mauri, Flores's live-in girlfriend, had stolen the money and he wanted Flores to give him the money back. Simply being injured by an employee

does not expose an employer to liability. Finally, both parties to the incident agreed that the whole ordeal was purely personal in nature.

{¶26} Third, Hudson argues that the Inn is liable for Flores's conduct because he was responsible for ensuring that all guests were safe while staying at the Inn. Hudson supports his argument by stating that Flores has experience being a security guard. This fact is irrelevant because Flores was not hired as a security guard and no part of his duties include those of a security guard. Although Flores admitted that he felt responsible for ensuring the safety of guests, he clarified that he ensured that safety by doing things like placing "wet floor" signs, shoveling snow off the sidewalk, and putting salt down during the winter months.

{¶27} Alternatively, Hudson argues that the Inn ratified Flores's conduct by failing to fire Flores after the incident and by telling Hudson that if he did not like it at the Inn he could leave. Again, Hudson's argument lacks merit. It is well established that the retention of an employee does not lead to a conclusion that an employer ratified the employee's conduct. *See Amato*, 2005-Ohio-189 at ¶ 16, citing Restatement of the Law 2d, Agency, Section 94, Comment d (1958). Patel testified that she talked with Flores about the incident and determined that it did not seem to be serious because Hudson did not go to the hospital right away and because this was the first incident she was aware of involving Flores. Under the second theory, Patel lacked knowledge of the facts when Hudson approached her

after the incident. At her deposition, Patel clearly and unequivocally testified that she did not know what happened between Flores and Hudson when she made the alleged comments to Hudson after he approached her after the incident. It was not until she was able to talk with Flores that she became aware of the specific facts. Thus, the Inn cannot have been said to ratify Flores's conduct when Patel made these statements.

{¶28} Finally, Hudson's ratification argument fails because the Inn received no benefit from Flores pushing Hudson. "When an employee strikes patrons, there is no obvious benefit to the principal, for it is an action 'to vent his own spleen or malevolence against the injured person, [and] is a clear departure from his employment and this principal or employer is not responsible therefor.' " *Amato* at ¶ 14, quoting *Vrabel v. Acri*, 156 Ohio St. 467, 474 (1952). The record is devoid of any evidence suggesting the Inn benefited from this incident. Without evidence of any benefit derived, Hudson's claims fail, and the Inn is entitled to judgment as a matter of law.

{¶29} Having found that no genuine issue of material fact exists, the Inn was entitled to judgment as a matter of law. Thus, the trial court did not err when it granted the Inn's motion for summary judgment. Further, although not expressly stated by Hudson as error, the trial court did not err when it granted Acuity's motion for summary judgment. Because Flores's actions were not within

the scope of his employment, he did not fall under the definition of "insured" in the policy. Thus, Acuity was entitled to judgment as a matter of law on their intervening complaint.

{¶30} Accordingly, we overrule Hudson's first, second, and third assignments of error.

{¶31} Having found no error prejudicial to Hudson, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**