COOKE, Admr., Appellant,

v.

MONTGOMERY COUNTY et al., Appellees.

[Cite as Cooke v. Montgomery Cty., 158 Ohio App.3d 139, 2004-Ohio-3780.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20262.

Decided July 9, 2004.

Thomas R. Schiff, Carl D. Sherrets, for appellant.

Susan M. DiMickele and Tiffany Komasara, for appellee FedEx Ground Package System, Inc.

John A. Cumming, Assistant Prosecuting Attorney, for appellee Montgomery County.

BROGAN, Judge.

{¶ 1} Nina Marshall Cooke, Administrator for the Estate of Nathan D. Marshall, appeals from trial court judgments dismissing claims against the following defendants: (1) Charles Curran, Don Lucas, and Vicki Pegg, as the Board of County Commissioners of Montgomery County, Ohio ("Board"); (2) Montgomery County Common Pleas Court, by and through its Administrative Judge, the Honorable Jeffrey E. Froelich ("Court"); and (3) Federal Express and Federal Express Corporation (changed to FedEx Ground Package Systems, Inc. by unopposed motion to conform the pleadings to show the real party in interest) ("FedEx"). Claims against Larry Gapen and Montgomery County, Ohio, re-

mained pending. However, the trial court recently dismissed claims against Montgomery County, Ohio, and also entered various Civ.R. 54(B) certifications. Cooke filed a notice of appeal from the latest dismissal, but that matter is not yet ready for decision. Instead, we consider only the two judgments dismissing the claims against the Board, the Court, and FedEx.

{¶ 2} In connection with the dismissal of FedEx, Cooke asserts these assignments of error:

{¶ 3} "I. The trial court erred in determining that Fed Ex was not liable under a theory of *respondeat superior*.

{¶ 4} "II. The trial court erred in determining that Fed Ex was not liable under a theory of negligent supervision.

{¶ 5} "III. The trial court erred in determining that Fed Ex was not liable under a theory of intentional infliction of emotional distress."

{¶ 6} Cooke also claims the following errors concerning the trial court's dismissal of claims against the Board and the Court:

{¶ 7} "I. The trial court erred in determining that Montgomery County was entitled to the defense of governmental immunity.

{¶ 8} "II. The trial court erred in determining that Montgomery County was not negligent in the death of Nathan Marshall."

{¶ 9} After considering the record and applicable law, we find all assignments of error without merit. Accordingly, the judgments of the trial court will be affirmed.

### Assignments of Error pertaining to FedEx

{¶ 10} The claims in the present case arose from the events of September 17 and 18, 2000. Previously, in July 2000, defendant Larry Gapen was indicted for abducting Martha Madewell. See *State v. Gapen*, Montgomery C.P. No. 2000 CR 1900. Gapen posted bond in the abduction case, and for a misdemeanor domestic violence charge stemming from the same incident. He was then released on electronic home detention. In addition, Gapen received work release privileges so that he could continue his employment or association with FedEx.

{¶ 11} Gapen was apparently scheduled to work for FedEx on September 17 and 18, 2000. Instead, Gapen broke the electronic detention and murdered three people: Martha Madewell, Nathan Marshall, and Jesica Young. Gapen was subsequently indicted and convicted on charges of aggravated murder in the deaths. Ultimately, Gapen received life sentences without parole for the deaths of Madewell and Marshall, and the death penalty for Young's death.

{¶ 12} On September 19, 2001, Cooke filed a wrongful death action against Gapen, the Board, the Court, FedEx, and Montgomery County, Ohio. The claims against FedEx were based on negligence, negligent supervision, and negligent infliction of emotional distress. FedEx filed a motion to dismiss under Civ. R. 12(B)(6), which was granted by the trial court without discussion on November 6, 2003.

{¶ 13} In her assignments of error, Cooke mentions three theories under which FedEx could potentially be held liable: respondeat superior, negligent supervision, and intentional infliction of emotional distress. The last theory is apparently raised in error, since both the complaint and text of Cooke's brief refer to negligent, rather than intentional, infliction of emotional distress. Accordingly, we will confine our discussion to negligent infliction of emotional distress.

{¶ 14} Judgments of dismissal are reviewed de novo, which means that both trial and appellate courts apply the same tests. *State ex rel. Karmasu v. Tate* (1992), 83 Ohio App.3d 199, 202, 614 N.E.2d 827.

{¶ 15} Thus, when we construe a complaint upon a motion to dismiss for failure to state a claim, "we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. * * * Then, before we may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery." *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, citing *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

## Respondeat Superior

{¶ 16} Although the first assignment of error is based on FedEx's potential liability under the theory of respondeat superior, Cooke did not mention this theory in the complaint. Instead, the claims against FedEx were based on FedEx's own alleged negligence, either in supervising Gapen, or in inflicting emotional distress. However, even if Cooke had raised respondeat superior, it would fail as a matter of law.

{¶ 17} For an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, the behavior giving rise to the tort must be " 'calculated to facilitate or promote the business for which the servant was employed.' " *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58, 565 N.E.2d 584, quoting *Little Miami RR. Co. v. Wetmore* (1869), 19 Ohio St. 110, 132.

{¶ 18} In *Byrd,* the court stressed:

{¶ 19} " '[A]n intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor.' * * * In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." Id. at 59, 565 N.E.2d 584, quoting *Vrabel v. Acri* (1952), 156 Ohio St. 467, 474, 46 O.O. 387, 103 N.E.2d 564.

{¶ 20} Furthermore, a servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master. *Anderson v. Toeppe* (1996), 116 Ohio App.3d 429, 436, 688 N.E.2d 538.

{¶ 21} Because the complaint in the present case lacks any allegations that would satisfy the above criteria, the trial court did not err in failing to find FedEx potentially liable under the theory of respondeat superior.

## Negligent Supervision

{¶ 22} In the second assignment of error, Cooke contends that the trial court erred in failing to find FedEx liable under the theory of negligent supervision. The elements of this claim are the same as those required to prove negligent hiring. *Browning v. Ohio State Hwy. Patrol,* 151 Ohio App.3d 798, 2003-Ohio-1108, 786 N.E.2d 94, at ¶ 67. Specifically, the elements are:

{¶ 23} (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724, 739, 680 N.E.2d 161.

{¶ 24} We find negligent supervision inapplicable, because the complaint does not indicate that Gapen was acting within the scope of his employment at the time of the alleged crimes. Further, the complaint does not allege that FedEx had actual or constructive knowledge that Gapen would commit murder. The fact that Gapen was charged with abduction does not mean that an employer could reasonably anticipate that he would escape and commit three murders.

{¶ 25} In this regard, Cooke relies on 2 Restatement of the Law 2d, Torts (1965) 125, Section 317, as outlined in *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 491, 575 N.E.2d 428. In *Kerans,* the plaintiff brought sexual harassment claims against her employer, based on certain actions her store manager had committed in the workplace. Specifically, the manager had touched her

breasts, had forced her to touch his genitalia, and had appeared naked before her, while asking her to watch him masturbate. Id. at 487, 575 N.E.2d 428. The Ohio Supreme Court found that even if the manager's actions were outside the scope of his employment, the employer could be held liable under Section 317 of the Restatement, which provides:

{¶ 26} "A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

{¶ 27} "(a) the servant

{¶ 28} "(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

{¶ 29} "(ii) is using a chattel of the master, and

{¶ 30} "(b) the master

{¶ 31} "(i) knows or has reason to know that he has the ability to control his servant, and

{¶ 32} "(ii) knows or should know of the necessity and opportunity for exercising such control."

{¶ 33} According to Cooke, FedEx should be held liable for Gapen's crimes because FedEx knew of the pending criminal charge, requested that Gapen be allowed work release privileges, and allowed Gapen to frequently alter his work schedule without reporting changes to Montgomery County Pre–Trial Services. However, we disagree. Even assuming the truth of these facts, there is simply no connection between any alleged actions of FedEx and Gapen's crimes. In *Kerans*, the Ohio Supreme Court stressed:

{¶ 34} "An employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees, even where the employee's actions do not serve or advance the employer's business goals. Whether the employer has acted appropriately in a particular situation is a factual matter to be determined on a case by case basis. However, where an employer knows or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing." Id. at 493, 575 N.E.2d 428.

{¶ 35} Notably, *Kerans* dealt with a safe work environment. Other courts have refused to apply Section 317 where the tortious conduct did not occur on company premises. See, *e.g.*, *Gilkey v. Gibson* (Jan. 6, 2000), Franklin App. No. 98AP–1570, 2000 WL 4973, * 3. See, also, *Vance v. Consol. Rail Corp.* (1995), 73

Ohio St.3d 222, 240, 652 N.E.2d 776 (Wright, J., concurring) (noting that under Section 317, an employer is liable where the employee acts outside the scope of employment, "only if the offending conduct occurs on the employer's premises and the employer knew or had reason to know that it could control the employee's conduct and knew or had reason to know of the necessity and opportunity to exercise that control, and failed to do so").

{¶ 36} The law generally provides:

{¶ 37} "[A] defendant has no duty to control the violent conduct of a third person as to prevent that person from causing physical harm to another unless a 'special relation' exists between the defendant and the third person or between the defendant and the other. In order for a special relation to exist between the defendant and the third person, the defendant must have the ability to control the third person's conduct." *Estates of Morgan v. Fairfield Family Counseling Ctr.* (1997), 77 Ohio St.3d 284, 673 N.E.2d 1311, at paragraph one of the syllabus. See, also, *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, at ¶ 38.

{¶ 38} Again, a duty could arise in the context of the employment relationship, but only in limited situations that simply do not exist in the present case. Accordingly, we agree with the trial court that Cooke's claims for negligent supervision fail to state a claim upon which relief can be granted. The second assignment of error is, therefore, without merit and is overruled.

### Negligent Infliction of Emotional Distress

{¶ 39} The third assignment of error concerns the claim for emotional distress. Cooke acknowledges that the present case fails to fit within the limited situations where recovery has been allowed for negligent infliction of emotional distress. Nonetheless, Cooke urges us to recognize the claim as a matter of public policy. We decline the request. Appellate courts are bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled. In Ohio, our Supreme Court is the primary judicial policymaker. As an intermediate appellate court, we should use caution in determining what the public policy of this state should be. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* Franklin App. No. 03AP–269, 2004-Ohio-2715, 2004 WL 1172877, at ¶ 25.

{¶ 40} Accordingly, the third assignment of error is without merit and is overruled.

### Assignments of Error Pertaining to the Board and the Court

### The Defense of Governmental Immunity

{¶ 41} In the first assignment of error directed to the Board and the Court, Cooke claims that the trial court erred in finding that governmental

immunity applies. According to Cooke, the government engages in a proprietary function when it keeps a percentage of bond money in criminal cases. This, in turn, gives rise to potential liability under the immunity exception in R.C. 2744.02(B)(2) for negligent performance of proprietary functions.

{¶ 42} As a preliminary point, we note that the complaint does not mention retention of bond money. Instead, the complaint simply states that Montgomery County had a duty, statutory or otherwise, to monitor Gapen and negligently breached this duty. Similar allegations are made regarding Montgomery County Pre-Trial Services.

{¶ 43} To decide if political subdivisions are immune from liability, courts use a three-tier analysis. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610:

{¶ 44} "First, R.C. 2744.02(A) sets forth the general rule of immunity, that political subdivisions are not liable in damages for the personal injuries or death of a person.

{¶ 45} "* * *

{¶ 46} "The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in former R.C. 2744.02(B). * * * Thus, once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply. * * * Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies." Id.

{¶ 47} Political subdivisions are generally immune from liability for both proprietary and governmental functions. R.C. 2744.02(A)(1). However, under R.C. 2744.02(B)(2), political subdivisions are liable for "injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶ 48} R.C. 2744.01(C)(1) defines "government functions" as those that are specified in R.C. 2744.01(C)(2) or that satisfy any of the following requirements:

{¶ 49} "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

{¶ 50} "(b) A function that is for the common good of all citizens of the state;

{¶ 51} "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not

customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function."

{¶ 52} The specific governmental functions mentioned in R.C. 2744.01(C)(2) include, among other things, "[j]udicial, quasi-judicial, prosecutorial, legislative, and quasi-legislative functions." R.C. 2744.01(C)(2)(f). In contrast, "proprietary functions" are defined as functions that are specified in R.C. 2744.01(G)(2), or that satisfy both of the following:

{¶ 53} "(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

{¶ 54} "(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1).

{¶ 55} R.C. 2744.01(G)(2) lists specific proprietary functions such as operation of hospitals, cemeteries, and stadiums. However, it does not include anything remotely related to electronic home monitoring. The activities of releasing accused criminals on bond and supervising their release, by electronic home monitoring and other means, are integral functions of the judicial system. The state as a whole has an obvious interest in these activities, and they are not elective matters done for the special benefit of the Board or the Court. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 558–559, 733 N.E.2d 1141. Accordingly, since the functions at issue were governmental, rather than proprietary, the Board and the Court are not liable for the alleged negligence of their employees under the immunity exception in R.C. 2744.02(B)(2).

{¶ 56} Based on the preceding discussion, the first assignment of error directed to the Board and the Court is without merit and is overruled.

### Application of the "Public Duty" Rule

{¶ 57} Cooke's second ground for potential liability of the Board and the Court rests on the "special duty" exception to the "public duty" rule. In *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, the Ohio Supreme Court held:

{¶ 58} "When a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury.

{¶ 59} "The public duty rule, and the special duty exception, comprise a doctrine which is independent of, and accordingly survived the abrogation of, sovereign immunity.

{¶ 60} "In order to demonstrate a special duty or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through

promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." Id. at paragraphs two, three, and four of the syllabus.

{¶ 61} Cooke argues that the facts in the complaint raise a genuine factual question concerning whether the Board and the Court assumed an affirmative duty toward Marshall. We disagree.

{¶ 62} As an initial point, we note that the "special duty" exception does not apply to the court's judicial actions. Members of the judiciary with jurisdiction over a controversy have "absolute immunity from civil liability for acts occurring during the performance of the judicial function." *Loyer v. Turner* (1998), 129 Ohio App.3d 33, 36, 716 N.E.2d 1193. Furthermore, Cooke is not challenging the court's actual decision on bond amount or to require electronic monitoring. Instead, the complaint focuses on negligence in the monitoring process itself. The Board could be found liable under this theory, if a "special duty" existed.

{¶ 63} Some appellate courts have held that passage of the Ohio Political Subdivision Tort Liability Act abrogated the public duty rule and the special duty exception in the context of political subdivision liability. See, e.g., *Franklin v. Columbus* (1998), 130 Ohio App.3d 53, 59, 719 N.E.2d 592. However, the Ohio Supreme Court recently stressed that although the public duty rule has been rejected in suits against the state in the Court of Claims, it still "remains viable as applied to actions brought against political subdivisions pursuant to R.C. Chapter 2744." *Yates v. Mansfield Bd. of Edn.*, 102 Ohio St.3d 205, 212, 2004-Ohio-2491, 808 N.E.2d 861, at ¶ 32, fn. 2. See, also, *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, at ¶ 15.

{¶ 64} While the Board is potentially liable, the allegations in the complaint fail to meet the requirements for finding the Board responsible under the "special duty" exception. Specifically, the complaint does not indicate that either the Board or its agents assumed an affirmative duty to act on Marshall's behalf. The complaint also does not allege that Marshall had direct contact with agents of the Board, or that Marshall relied on the affirmative undertaking of such parties. As a result, the complaint fails to state a claim under the "special duty" exception to the "public duty" rule.

{¶ 65} According to Cooke, two Ohio Supreme Court cases have held that the state creates an actionable duty to the public when the state imposes

specific statutory standards on itself. Cooke argues that this concept is relevant because the state statutorily defined duties for electronic home monitoring in R.C. 2929.23. Once again, we must disagree.

{¶ 66} In the first place, R.C. 2929.23 does not apply to this case. At the time of Marshall's death, R.C. 2929.23(B)(1) allowed courts to impose periods of electronic monitoring for "eligible offenders." However, the statute defines the particular monitoring as a sanction that is "in addition to or in lieu of any other sentence imposed or authorized for the offense." Id. The statute also defines "eligible offender" as "a person who has been convicted of or pleaded guilty to any offense." R.C. 2929.23(A)(3). Under the plain terms of the statute, R.C. 2929.23 does not apply to persons released on bail before conviction and does not provide a basis for creating some type of actionable duty on the Board's part.

{¶ 67} As an additional matter, the cases Cooke has cited do not deal with "public duty" or the "special duty" exception to the public duty rule. See *Reynolds v. State, Div. of Parole & Community Services* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, and *Crawford v. State, Div. of Parole & Community Services* (1991), 57 Ohio St.3d 184, 566 N.E.2d 1233. Instead, both *Reynolds* and *Crawford* held that failure to confine prisoners during non-work hours in accordance with R.C. 2967.26 is negligence per se, and is actionable against the state in the Court of Claims under R.C. 2743.02. *Reynolds*, 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph two of the syllabus, and *Crawford*, 57 Ohio St.3d at 189, 566 N.E.2d 1233. These conclusions were based on the fact that R.C. 2967.26 imposes a mandatory duty on the state to confine furloughed prisoners. 57 Ohio St.3d at 189, 566 N.E.2d 1233.

{¶ 68} No such statutory duty applies to the present case. Moreover, there is a distinction between accused parties and prisoners who have, in fact, been convicted of crimes. Without question, some accused individuals can pose a risk of harm to society. However, a presumption of innocence does exist before conviction. After conviction, this presumption is rebutted, and criminals no longer have a constitutional right to bail. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67.

{¶ 69} Because we can find no basis for holding the Board or the Court liable under the "special duty" exception to the "public duty" rule, the second assignment of error asserted against these parties is without merit and is overruled.

{¶ 70} Based on the preceding discussion, all assignments of error are overruled and the judgments of the trial court are affirmed.

Judgments affirmed.

FAIN, P.J., and FREDERICK N. YOUNG, J., concur.