OPINION
{¶ 1} Plaintiff-appellant, Pritesh Patidar, administrator of the estate of Kalpana Patidar ("Patidar"), deceased, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to Tri-State Renovations, Inc. ("Tri-State"), defendant-appellee.
 {¶ 2} Tri-State is a construction contractor. Its construction crews receive work assignments via telephone and then report directly to job sites from their homes. Tri-State began a renovation project in mid-2004 in Lorain, Ohio. The employees working on the Lorain project lived in or near Cambridge, Indiana, which is approximately a four and one-half hour drive to and from Lorain. During the Lorain project, Tri-State provided the crew with housing near the construction site. However, because Tri-State permitted the crew to work four ten-hour days, they returned to their homes in Indiana for three-day weekends. For the Lorain project, the crew decided they would carpool together from Indiana to Lorain and back. Tri-State foreman Randy Reisert ("Reisert") would drive a company vehicle, for which Tri-State would pay the gas via Reisert's company credit card, and another Tri-State employee, Thomas Corn, would drive a second vehicle owned by Reisert's wife, Phyllis Reisert. Pursuant to Tri-State's normal policy, Tri-State reimbursed Corn 25 cents per mile for travel outside of a 25-mile radius; thus, 50 miles was deducted from the total mileage of every round trip Corn made to Lorain.
 {¶ 3} At approximately 5:40 a.m., on October 25, 2004, Patidar was operating her automobile westbound on a two-lane roadway in Hancock County, Ohio. At the same time, heading eastbound were three vehicles. The first vehicle was a semi-tanker truck. The second vehicle was the Tri-State pickup truck operated by Reisert. Also in the vehicle were four other Tri-State employees. The third vehicle was the pickup truck owned by Reisert's wife and operated by Corn. Also in this vehicle were two Tri-State employees. The Tri-State employees were driving to the Lorain job site after spending a three-day weekend in Indiana. Reisert passed the tanker truck successfully, although he had to swerve back into the eastbound lane to avoid Patidar's on-coming vehicle. Corn then attempted to pass the tanker truck but collided with Patidar's vehicle. Both Patidar and Corn died as a result of the accident.
 {¶ 4} On March 15, 2005, appellant filed a wrongful death action against Tri-State, against which it alleged respondeat superior, and Phyllis Reisert, who was eventually voluntarily dismissed. On October 25, 2005, Tri-State filed a motion for summary judgment, asserting that Corn was not in the course and scope of his employment at the time of the accident, and, thus, Tri-State was not liable under respondeat superior. On December 22, 2005, appellant filed a motion to deem responses admitted, based upon Tri-State's failure to file responses to appellant's September 13, 2005 request for admissions. On February 3, 2006, the trial court issued a decision granting summary judgment to Tri-State. A judgment was filed February 16, 2006. Appellant appeals the judgment of the trial court, asserting the following two assignments of error:
1. The Trial Court Erred In Granting The Defendant Tri-State Renovations, Inc.'s Motion For Summary Judgment.
2. The Trial Court Erred And Abused Its Discretion In Failing To Rule On Plaintiff's Motion To Deem Responses Admitted, Which Ruling Would Have Provided Further Evidence To Oppose Defendant's Motion For Summary Judgment.
 {¶ 5} Before addressing the merits of Tri-State's motion for summary judgment, we must address appellant's contention in his second assignment of error that the trial court erred in failing to rule on his motion to deem responses admitted, which he claims would have provided further evidence to oppose Tri-State's motion for summary judgment. On September 13, 2005, appellant served upon Tri-State his first request for admissions, two of which sought admissions to the following:
1) On October 25, 2004 Thomas Corn was driving employees of this Defendant to a job site for the benefit of Tri [State] Renovations.
2) On October 25, 2004 Thomas Corn was driving materials and supplies to a job for the benefit of Tri [State] Renovations.
As Tri-State did not respond within 28 days, appellant, although he did not need to, filed a motion to deem responses admitted on December 22, 2005. On December 27, 2005, Tri-State filed a memorandum contra appellant's motion to deem responses admitted, to which it attached responses to the request for admission. Tri-State indicated that the responses had been completed September 19, 2005, but inadvertently had not been sent to appellant's counsel. The trial court never specifically ruled on appellant's motion to deem responses admitted and did not rely upon any admissions in rendering its decision.
 {¶ 6} Once a request for admissions is served, the matters contained therein are admitted unless the receiving party serves written answers or objects to the items within 28 days of service. Civ.R. 36(A). However, a trial court may permit the withdrawal or amendment of an admission when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Civ.R. 36(B). Thus, "[u]nder compelling circumstances, the court may allow untimely replies to avoid the admissions." Cleveland Trust Co. v. Willis (1985),20 Ohio St.3d 66, 67. The decision whether to grant or deny a request for a withdrawal or amendment of an admission rests within the discretion of the trial court. Balson v. Dodds
(1980), 62 Ohio St.2d 287, paragraph two of the syllabus;Beechwoods, Inc. v. Hosfelt (Oct. 9, 1979), Franklin No. 79AP-117. Therefore, absent a showing that the court's attitude was unreasonable, arbitrary, or unconscionable, no error will be found by a reviewing court. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 7} In the present case, although the trial court did not specifically deny the motion to deem responses admitted, it tacitly denied the motion by not ruling on it and found "there was no benefit to Tri-State until the men got to the job," indicating withdrawal of Tri-State's admissions and consideration of Tri-State's untimely responses. We find the trial court did not abuse its discretion by allowing Tri-State to file its responses untimely. Further, withdrawal of the admissions clearly aided in presenting the merits of the case. Civ.R. 36(B) clearly emphasizes the importance of having the action resolved on the merits. Cleveland Trust Co., supra, at 67. Also, the withdrawal did not prejudice appellant. Appellant did not rely upon the admissions in contesting Tri-State's motion for summary judgment and never cited to the admissions at any time in the proceedings. It is also clear from the record that Tri-State was contesting the issues relevant to the first two admissions from the very early stages of the case. Given these circumstances, and Tri-State's explanation that it had inadvertently failed to send its completed responses, we conclude the trial court did not abuse its discretion by permitting Tri-State to withdraw its admissions. See, e.g., Snyder v. Ford Motor Co., Allen App. No. 1-05-41, 2005-Ohio-6415, at ¶ 15 (no abuse of discretion by allowing withdrawal of admission when failure to file timely responses was due to inadvertence and not willful). Appellant's second assignment of error is overruled.
 {¶ 8} Appellant argues in his first assignment of error that the trial court erred in granting summary judgment. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate.Franks v. The Lima News (1996), 109 Ohio App.3d 408. Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. Stateex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks, supra.
 {¶ 9} Appellant alleged in his complaint that Tri-State was liable for the death of his mother under the doctrine of respondeat superior. In order for an employer to be liable under respondeat superior, the employee's tort must be committed within "the scope of employment" with the employer. Byrd v. Faber
(1991), 57 Ohio St.3d 56, 58. An employer is not liable for independent, self-serving acts of employees that, in no way, facilitate or promote the employer's business. Groner v.DeLevie (May 1, 2001), Franklin App. No. 00AP-1244. Whether an employee is acting within the scope of employment is generally a question of fact to be determined by a jury, and it "only becomes a question of law when reasonable minds can come to but one conclusion." Davis v. May Dept. Stores Co. (Sept. 26, 2001), Summit App. No. 20396.
 {¶ 10} The "coming-and-going" rule was originally discussed in the context of an Ohio workers' compensation case, Ruckman v.Cubby Drilling, Inc. (1998), 81 Ohio St.3d 117, 119, to assist in the determination of whether an injury suffered by an employee in a traffic accident occurs "in the course of" the employment relationship. However, this rule has been used by this court, as well as many other appellate courts in Ohio, to determine whether an employee was in the course of employment for purposes of respondeat superior. See Cincinnati Ins. Co. v. Lohri, Franklin App. No. 05AP-94, 2005-Ohio-5167, at ¶ 18-19. Pursuant to the "coming-and-going" rule, an employee with a fixed place of employment (a "fixed-situs" employee), who is injured while traveling to or from his place of employment, is not within the course of employment because "[i]n the normal context, an employee's commute * * * bears no meaningful relation to his employment contract and serves no purpose of the employer's business." Ruckman, at 121. The rationale for this coming-and-going rule is to compensate the employee for hazards the employee encounters in the discharge of the duties of his employment, but not for risks and hazards, such as those of travel to and from his place of actual employment over streets and highways, which are similarly encountered by the public generally. Id., at 119. In determining whether an employee is a fixed-situs employee, and, therefore, within the coming-and-going rule, the focus is on whether the employee commences his or her substantial employment duties only after arriving at a specific and identifiable workplace designated by his or her employer. Id., at paragraph one of the syllabus. That focus remains the same even though the employee may be reassigned to a different workplace monthly, weekly, or even daily. Id. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment. Id.
 {¶ 11} However, that the employee is determined to be a fixed-situs employee does not end the inquiry. A fixed-situs employee may avoid application of the coming-and-going rule if "he can, nevertheless, demonstrate that he received an injury in the course of * * * his employment." Id., at 120. "The phrase `in the course of employment' limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service." Id. "An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business[,]" such as when "the employee travels to the premises of one of his employer's customers to satisfy a business obligation." Id., at 121. If the employee sustains his injuries off his employer's premises, then to show that he received his injuries in the course of employment, "`the employee, acting within the scope of his employment, must, at the time of his injury, have been engaged in the promotion of his employer's business and in the furtherance of his affairs.'" Id., quoting Indus. Comm. v. Bateman (1933), 126 Ohio St. 279.
 {¶ 12} In the present case, appellant presents no argument contesting that Corn was a fixed-situs employee, and the record supports such a finding. Corn and the other Tri-State workers did not commence their substantial employment duties until after arriving at a specific and identifiable workplace designated by his employer. The evidence established the workers were paid only for the work they performed at the Lorain work site. Tri-State's Vice-President, Randall Kratzer, testified the workers were not paid for driving time and their pay only began when they arrived at the job site at 8:00 a.m. He stated that Tri-State received no benefit until the workers started "driving nails." He further averred that the workers were paid on an hourly basis and their pay and any benefits they worked to receive were based only upon the time spent working on-site. It is also undisputed that Corn did not perform any work-related activities outside of the confines of the Lorain construction site or during his commutes to and from Indiana. Based upon these circumstances, Corn was a fixed-situs employee.
 {¶ 13} Despite being a fixed-situs employee and, thus, within the coming-and-going rule, appellant argues that Corn fits within an exception to the rule because Corn's travel to the Lorain job site was to satisfy a business obligation, citing the following circumstances he claims are similar to those in Ruckman: (1) the nature of the Tri-State employment required the work to be done on the customers' premises; (2) doing work on the customers' premises was a necessary condition of the work contract; (3) after the work on the customers' premises was completed, the Tri-State crew would take their tools and go to the next work site as the employer directed; and (4) Tri-State paid some form of compensation for the travel to the job site.
 {¶ 14} However, the present case includes one key fact that takes it out of the purview of Ruckman and renders it distinguishable from Ruckman. In the present case, it is undisputed that Tri-State provided local lodging for Corn and the other employees who were working on the site in Lorain. The lodging was available to Tri-State's workers during both the week, as well as the weekends, for the entire duration of the project. It was wholly the decision of Corn and the other Tri-State employees whether they drove home during three-day breaks or whether they stayed at their local Lorain housing. This was not a situation, as in Ruckman, wherein the lengthy travel during which the accident occurred was a necessary activity associated with the job because the workers were not given local accommodations unless they arranged and paid for such themselves. See Ruckman, at 124-125. Thus, in voluntarily opting to drive to and from the local work site to his home in Indiana, Corn was not "performing a required duty in the employer's service." Id., at 120. (Emphasis added.)
 {¶ 15} In addition, although appellant cites several circumstances he claims are similar to those in Ruckman, they, nevertheless, fail to support his underlying proposition that Corn's travel to the Lorain job site was to satisfy a business obligation of Tri-State. To satisfy the business obligation in the present case, Corn was required to travel only from the local Lorain housing to the job site. Corn was not required to travel from Indiana to Lorain to satisfy Tri-State's requirement that he be at the work site. At the time of the accident, Corn was also not engaged in the promotion of his employer's business or in the furtherance of its affairs. Corn was traveling to the job location from his home, which he had returned to for the weekend for his own pleasure and convenience, despite being provided with accommodations at the job site. His presence at the location of the accident was a circumstance that arose based upon his own choices and decisions and was not in furtherance of Tri-State's business or the result of Tri-State's suggestion, urging, or coercion. Although Tri-State did permit the employees to work four-day workweeks to give them the opportunity to travel to their Indiana homes during their time off, if they so chose, this accommodation by Tri-State falls short of the influence exerted upon the workers in Ruckman, who had no choice but to travel long distances or arrange and pay for their own housing near the work site. See Ruckman, at 124-125.
 {¶ 16} It is also important to point out that, although Kratzer stated that workers for Tri-State may have carried corporate tools from site to site between jobs, he testified that, if any of the workers were in possession of Tri-State owned tools at the time of the accident in question, they were transporting them without Tri-State's knowledge or permission, as Tri-State was only half completed with the Lorain project, and Tri-State had no projects in Indiana that would have necessitated transporting corporate tools to and from Indiana. In addition, when viewed in the context of the other pertinent facts in this case, we find Tri-State's mileage reimbursement to Corn and other employees to be a weak indicator of whether he was in the course of his employment at the time of the accident. As the court inRuckman pointed out, payment for travel "is far too malleable to serve as a leading factor in the course-of-employment inquiry." Ruckman, supra, at fn. 1. Consequently, based upon the entirety of the surrounding circumstances, we cannot find that Corn was fulfilling a particular business obligation at the time of the accident. Therefore, reasonable minds could only conclude that Corn's commute to a fixed work site was no different than the normal commute undertaken by any other worker to a place of employment. Under such circumstances, the coming-and-going rule precludes a finding that Corn was in the course of employment. For these reasons, Tri-State was entitled to summary judgment, and appellant's first assignment of error is overruled.
 {¶ 17} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and PETREE, JJ., concur.