OPINION
{¶ 1} Appellants appeal a decision of the Clermont County Court of Common Pleas *Page 2 
granting summary judgment to appellees in a negligence action. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} Joshua Kash began working as a laborer for VFL Technology Corporation (hereinafter, "appellee") in early September 2003. On the afternoon of September 13, 2003, Kash was travelling west on U.S. 52 in Clermont County after leaving a job site in Aberdeen, Ohio. Kash fell asleep at the wheel of his 1991 Saturn and drifted to the left of center into oncoming traffic, striking a group of motorcyclists on a charity ride. One motorcyclist was killed and others sustained serious bodily injuries.[1]
 {¶ 3} The present action was instituted on April 5, 2005 by injured motorcyclists Catherine Lipps, Michael Riley, Kevin Cissna, and Terri Cissna, and also by Kimberly Rigdon (wife of deceased motorcyclist Larry Rigdon) (hereinafter, "appellants"). As relevant to the present appeal, appellants brought claims against appellee under theories of respondeat superior and negligence.[2] Appellee filed a motion for summary judgment, which the trial court granted on December 29, 2006. Appellants timely appeal, raising one assignment of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN GRANTING APPELLEE VFL TECHNOLOGY CORPORATION'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 6} Appellants challenge the trial court's grant of summary judgment to appellee, raising three issues for our review. This court reviews a trial court's decision on summary judgment de novo. Burgess v.Tackas (1998), 125 Ohio App.3d 294, 296. Summary *Page 3 
judgment is proper when (1) there are no genuine issues of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ. R. 56(C). See, also, Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66.
 {¶ 7} First, appellants argue that appellee is liable for their injuries under the doctrine of respondeat superior. According to appellants, Kash's negligence in causing the accident occurred within the scope of his employment. Kash was paid overtime for eight hours of work on the day of the accident, even though he was on the job site for only five to six hours, and was off work all day the day before. Thus, appellants reason, travelling to and from the job site was part of Kash's job duties that day for which he received compensation.
 {¶ 8} Under Ohio law, an employer may be held liable for the negligent conduct of an employee acting within the scope of his employment under the doctrine of respondeat superior. Orebaugh v. Wal-Mart Stores,Inc., Butler App. No. CA2006-08-185, 2007-Ohio-4969, ¶ 8. In a summary judgment proceeding, whether an employee is within the scope of his employment is generally a question of fact to be decided by the jury.Osborne v. Lyles (1992), 63 Ohio St.3d 326, 330. However, such an issue becomes a question of law when the facts are undisputed and reasonable minds can come to but one conclusion. Id.
 {¶ 9} The Ohio Supreme Court articulated the circumstances under which an employer may be liable for the negligence of its employee in operating the employee's personal vehicle in Boch v. New York Life Ins.Co. (1964), 175 Ohio St. 458. Such liability may be imposed when: (1) the employer authorized the employee to use his personal vehicle in doing the work he was employed to do, (2) the employee was negligent while doing the work that he was employed to do, and (3) the employee was subject to the direction and control of the employer in operating the employee's personal vehicle while using it in doing *Page 4 
the work he was employed to do. Id. at paragraph one of the syllabus.
 {¶ 10} Under the facts in the record, none of the three elements of the Boch test were met. Kash was not using his personal vehicle to carry out his job as a laborer, nor do the facts indicate that appellee expressly or impliedly authorized him to use his personal vehicle to carry out his job. Kash was not negligent while doing the work he was employed to do. Rather, his negligent conduct occurred when he fell asleep at the wheel of his vehicle on the way home from work. Also, Kash was not subject to appellee's direction and control while driving home in his personal vehicle. Once work was finished at the job site that day, Kash left company premises and was "off the clock."
 {¶ 11} The Boch court also pronounced that, "[a]s a matter of law, a master is not liable for the negligence of his servant while driving to work at a fixed place of employment, where such driving involves no special benefit to the master other than the making of the servant's services available to the master at the place where they are needed." Id. at paragraph two of the syllabus. The evidence does not support that the use of Kash's personal vehicle to travel to the Aberdeen job site conferred any special benefit to appellee. Instead, the vehicle simply served as the means by which Kash travelled to and from the job site in order to make his services available to appellee at the place where they were needed. Id.
 {¶ 12} In accordance with the "coming and going rule," it is generally accepted that an employee who commutes to the same site each day to carry out his job duties (a "fixed situs" employee) is, as a matter of law, not acting within the scope of employment when travelling to and from work. Curtis v. Gulley, Fayette App. No. CA2006-03-013,2006-Ohio-6081, ¶ 12. Though this rule was originally stated in the context of workers' compensation claims, it has since been applied to cases involving claims of liability based upon the theory of respondeat superior. See, e.g., Patidar v. Tri-State Renovations, Inc., Franklin App. No. 06AP-212, *Page 5 2006-Ohio-4631, ¶ 10.
 {¶ 13} There is no evidence available to exclude the case sub judice from the "coming and going rule." Appellants make much of the fact that Kash was paid overtime for an eight-hour workday on the day of the accident even though he physically worked less than eight hours. Such facts, without more, do not support the unreasonable inference that Kash was operating within the scope of employment while commuting to and from work that day. There was no evidence that Kash's employment contract or company policy stated that an employee received payment for commuting to and from a job site while working overtime hours. Cf. Cox v. Kerr (June 17, 1996), Richland App. No. 96-CA-2, 1996 WL 363542. In addition, there was no evidence that Kash or the other two employees who worked that day were told by any employee in management that they would be compensated for travel.
 {¶ 14} Kash and the other two employees working overtime were told they would receive eight hours of pay regardless of how many hours it took to complete the job that Saturday. It turned out that the job required less than eight hours to complete. Had the job ended up taking more than eight hours, appellants' argument that Kash was paid for his commute unravels. In addition, Mark Carr, one of the other employees who worked that day, testified in his deposition that they were basically "rewarded" for working on a Saturday by being promised eight hours of pay even if the job did not take eight hours to complete. There is no evidence that this was to include travel time.
 {¶ 15} Appellants emphasize the fact that Kash lived in Franklin, Ohio, over 100 miles from the Aberdeen job site, at the time of the accident. Contrary to appellants' assertions, the fact that appellant traversed a 100-mile distance for his commute does not bring this case within the special hazard exception to the coming and going rule. The Ohio Supreme Court enunciated this exception in Ruckman v. CubbyDrilling, Inc., 81 Ohio St.3d 117, 1998-Ohio-455. The Ruckman court was confronted by a case where fixed situs employees were *Page 6 
injured in traffic accidents during travel from their homes to remote drilling sites. The court permitted these employees to recover workers' compensation because their commutes served a function of the employer's business and created a risk that was inherently distinct or quantitatively greater than risks common to the public. Id. at paragraph two of the syllabus.
 {¶ 16} The present matter is distinguishable from Ruckman. InRuckman, the employees were regularly sent to remote work sites spanning a three-state area for projects lasting from three to ten days. Employees were required to report to revolving work sites separated by significant distances. Planning commutes and, if necessary, overnight arrangements was difficult for the employees. The court concluded that the employment relationship exposed these employees to increased traffic risks not common to the public.
 {¶ 17} In distinguishing the facts of the case before it from other cases involving employee travel, the Ruckman court made the following observation:
 {¶ 18} "For most employees, commuting distance to a fixed work site is largely a personal choice. Any increased risk due a longer commute is due more to the employee's choice of where he or she wants to live than the employer's choice of where it wants to locate its business. Accordingly, it usually is not the employment relationship that exposes an employee to the greater risk associated with a long commute. Moreover, the risks associated with highway travel are not distinctive in nature from those faced by the public in general." Id. at 125.
 {¶ 19} It was Kash's choice to live 100 miles away from appellee's job site. This was Kash's only job site. His extended commute was in no way attributable to appellee. Appellee did not require Kash to live in Franklin and traverse this long distance, nor was the commute a function of appellee's business. Also, in travelling to the same job site daily, Kash was not exposed to a risk greater than that faced by the general public. Finally, Kash was off all day the day before. The special hazard exception to the coming and going rule is thus not *Page 7 
applicable under the facts of this case.
 {¶ 20} Construing the evidence most strongly in favor of appellants, we find that no reasonable minds could conclude that Kash, a laborer, was performing work for appellee or was subject to appellee's control while driving home from the job site on the day of the accident. Nor could reasonable minds conclude that Kash was within the scope of his employment when he collided with the motorcyclists while driving home in his personal vehicle after completing work at the job site. The trial court, therefore, did not err by finding that appellee was not liable for appellants' injuries under the theory of respondeat superior.
 {¶ 21} In their second argument, appellants contend that appellee was liable for their injuries because appellee was negligent in contributing to Kash's fatigue. Kash, who was 18-years-old at the time of the accident, reported to a job site over 100 miles from his residence at 7 a.m. to work overtime at the end of his first week on the job. As a result of these circumstances, appellants assert, appellee should have been aware that Kash was tired and sleep deprived.
 {¶ 22} In order to recover on a negligence claim, the complaining party must establish (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach of duty.Texler v. D.O. Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677,680, 1998-Ohio-602. The existence of a duty in a negligence action is a question of law for the court. Hickman v. Warehouse Beer Systems,Inc. (1993), 86 Ohio App.3d 271, 273.
 {¶ 23} In support of their assertion that appellee had a duty to control Kash's conduct on the day in question, appellants cite 2 Restatement of the Law 2d, Torts (1965), Section 317, which states the following:
 {¶ 24} "A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally *Page 8 
harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
 {¶ 25} "(a) the servant
 {¶ 26} "(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
 {¶ 27} "(ii) is using a chattel of the master, and
 {¶ 28} "(b) the master
 {¶ 29} "(i) knows or has reason to know that he has the ability to control his servant, and
 {¶ 30} "(ii) knows or should know of the necessity and opportunity for exercising such control."
 {¶ 31} As the trial court observed, Restatement Section 317 has not been applied to a case similar to the present matter. Rather, cases invoking this section have been limited to those where the tortious conduct of the employee occurred on the employer's premises. Gilkey v.Gibson (Jan. 6, 2000), Franklin App. No. 98AP-1570, 2000 WL 4973, at *3. See, also, Kerans v. Porter Paint Co. (1991), 61 Ohio St.3d 486, 492-94. Kash was not upon appellee's premises at the time of the accident, nor was he using a chattel belonging to appellee. Rather, he was driving his personal vehicle on a public highway.
 {¶ 32} In addition, appellee had no cause to believe it had the ability to control Kash once he left the job site. A fixed situs employee who uses his personal vehicle to drive to and from work is not typically considered to be subject to the direction or control of his employer for purposes of the commute. Boch, 175 Ohio St. at 463. This is true unless the employer retains some special benefit as a result of the employee's driving to or from work, other than the employee making his services available where they are needed. Id. at paragraph two of the syllabus. We have already concluded that appellee derived no special benefit from *Page 9 
Kash's driving to and from the fixed place of employment other than Kash making his services available to appellee at the necessary locality. Because none of the elements of Restatement Section 317 are met, this section is inapplicable to the present case. Accordingly, appellee owed no duty to appellants to control Kash's conduct while he was driving himself home from the job site.
 {¶ 33} Appellants' third argument is that appellee breached a duty imposed by R.C. 4511.79(B). This statute prohibits a person employing the owner of a "commercial car" from requiring or knowingly permitting a fatigued driver to drive such vehicle upon any street or highway. R.C. 4501.01(J) defines a "commercial car" or "truck" as "any motor vehicle that has motor power and is designed and used for carrying merchandise or freight, or is used as a commercial tractor."
 {¶ 34} Clearly Kash's 1991 Saturn, a personal passenger vehicle, does not qualify as a "commercial car" as contemplated by R.C. 4501.01(J). The record does not indicate that Kash's vehicle was designed and used to carry merchandise or freight. Rather, Kash used this vehicle to transport himself to the job site. The vehicle was not being used for any business purposes. Just because the vehicle could theoretically carry merchandise or freight does not mean that it qualifies as a "commercial car." Because Kash's personal vehicle was not a "commercial car," appellee was under no duty under R.C. 4511.79(B) to prevent Kash from driving home on the day in question.
 {¶ 35} We conclude that the trial court did not err in granting summary judgment to appellee. Appellants' sole assignment of error is overruled.
 {¶ 36} Judgment affirmed.
YOUNG, P.J. and BRESSLER, J., concur.
[1] Kash pled no contest to one count of vehicular homicide and three counts of negligent assault and was sentenced to 360 days in prison.
[2] Appellants also brought claims against Kash and numerous other defendants, none of whom are parties to this appeal. *Page 1