[Cite as *Webb v. Higgs*, 2012-Ohio-3291.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI   COUNTY**

| | | |
|---|---|---|
| STEWART WEBB, et al. | : | |
| | : | Appellate Case No. 2011-CA-22 |
| Plaintiff-Appellants | : | |
| | : | Trial Court Case No. 2008-CV-853 |
| v. | : | |
| | : | |
| WILLIAM J. HIGGS, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of July, 2012.

. . . . . . . . . .

JOSE M. LOPEZ, Atty. Reg. #0019580, and CHRISTOPHER D. CLARK, Atty. Reg. #0065132, Lopez, Severt & Pratt Co., L.P.A., 18 East Water Street, Troy, Ohio 45373
        Attorneys for Plaintiff-Appellants, Stewart and Monica Webb

JAMES D. UTRECHT, Atty. Reg. #0015000, Utrecht & Young, LLC, 12 South Plum Street, Troy, Ohio 45373
        Attorney for Defendant-Appellee, Star-Ex, Inc.

LANCE K. OLIVER, Atty. Reg. #0085767, Lawrence & Russell, LLP, 5178 Wheelis Drive, Memphis, Tennessee 38117
        Attorney for Defendant-Appellee, Wal-Mart Stores, Inc.

TINA T. PECUSZOK, Atty. Reg. #0081535, 130 West Second Street, Suite 410, Dayton, Ohio 45402
        Attorney for William J. Higgs

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Stewart Webb appeals from the trial court's entry of final judgment against him on his respondeat superior claim against appellee Star Ex, Inc., and in his favor on a negligence claim against appellee William Higgs.[1]

{¶ 2}    Webb advances two assignments of error on appeal. First, he contends the trial court erred in overruling his motion for a directed verdict on the respondeat superior claim. Second, he asserts that the trial court erred in overruling his motion for judgment notwithstanding the verdict or, alternatively, for a new trial on the same claim.

{¶ 3}    The record reflects that Webb suffered serious injuries when a motorcycle he was riding struck a pick-up truck being driven by Higgs. As a result of the accident, Webb sued Higgs and Higgs's employer, Star Ex. The trial court entered summary judgment for Webb on the issue of Higgs's negligence. The trial court denied cross motions for summary judgment on the issue of Star Ex's respondeat superior liability. The case proceeded to a May 2011 jury trial. At the conclusion of the evidence, Webb moved for a directed verdict on the respondeat superior issue. The trial court denied the motion. The jury then rendered a verdict in favor of Webb and against Higgs for $967,224.65. The jury rendered a verdict against Webb, however, on his respondeat superior claim against Star Ex. In response to an interrogatory, the jury found that Higgs was not acting in the scope of his employment with Star Ex when he turned his truck in front of Webb's approaching motorcycle. The trial court later denied Webb's motion for judgment notwithstanding the verdict and motion for a new

---

[1] We note that Stuart Webb's wife, Monica Webb, is also a named appellant in this case. She participated in the proceedings below based on a derivative loss-of-consortium claim she asserted.

trial on the respondeat superior issue.

{¶ 4} On appeal, Webb has briefed both of his assignments of error together because they raise the same issue, to wit: whether the trial court should have ruled, as a matter of law, that Higgs was acting in the scope of his employment at the time of the accident. Webb argues that the undisputed facts compel such a conclusion. Therefore, he contends the trial court erred in overruling his motion for a directed verdict and motion for judgment notwithstanding the verdict.

{¶ 5} It is well established that an employee who commits a tort must be acting in the scope of his employment in order for his employer to be held liable under the doctrine of respondeat superior. *Grubb v. Security National Bank and Trust Co.*, 2d Dist. Clark No. 06-CA-1034, 2007-Ohio-1034, ¶ 9. Whether an employee is acting in the scope of his employment ordinarily is a question of fact for a jury to decide. *Id.* at ¶ 10. The scope-of-employment issue becomes a question of law, however, when reasonable minds can reach only one conclusion. *Id.* This court has applied a three-part test, recognizing that "a servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master." *Cooke v. Montgomery Cty.*, 158 Ohio App.3d 139, 2004-Ohio-3780, 814 N.E.2d 505, ¶20.

{¶ 6} "The standard of review for a motion for judgment notwithstanding the verdict is the same as that for a directed verdict: construing the evidence most strongly in favor of the party against whom the motion is directed, the motion must be overruled unless reasonable minds could reach no other conclusion but that, under the applicable law, the movant is

entitled to judgment in his favor." *Hemphill v. Dayton*, 2d Dist. Montgomery No. 23782, 2011-Ohio-1613, ¶ 19. We review the trial court's ruling de novo. *Kademian v. Marger*, 2d Dist. Montgomery No. 24256, 2012-Ohio-962, ¶ 56.

{¶ 7} With the foregoing standards in mind, we turn to Webb's argument that the trial court should have granted him a directed verdict or a judgment notwithstanding the verdict.[2] Trial testimony established that Higgs was employed by Star Ex, a construction company, as a member of a pipe crew. As part of his job, he worked at various construction sites. Star Ex also required him to attend periodic safety meetings at its office in Covington, Ohio. On the day in question, Higgs attended such a safety meeting early in the morning. Higgs and other Star Ex employees received thirty minutes' pay for the time they spent in the safety meeting. The employees' attendance at the meeting benefitted Star Ex by satisfying OSHA requirements. At trial, Star Ex did not dispute that Higgs was acting in the scope of his employment during the safety meeting.

{¶ 8} The parties' dispute focused on whether Higgs was acting in the scope of his employment when, immediately after the safety meeting, he drove his personal vehicle to his assigned construction site, the Hawk's Nest subdivision, to begin working there. The record supports Webb's claim that Star Ex directed Higgs to go to the Hawk's Nest and expected him to use his own vehicle. The record also supports Webb's claim that upon arriving Star Ex expected Higgs to park in what was referred to as the employees' "staging area."

---

[2] Although Webb's appellate brief mentions his motion for a new trial, his argument focuses on the motions for a directed verdict and judgment notwithstanding the verdict.

{¶ 9}    Webb argues that "[d]riving to Hawk's Nest was * * * an integral part of Higgs's job in that it was necessary for him to perform his work on the pipe crew." Webb also asserts that Higgs was promoting and furthering Star Ex's business by "traveling to the premises of his employer's customer to perform his work (on the pipe crew)." Since the accident occurred while Higgs was traveling to the Hawk's Nest, Webb reasons that Higgs' conduct was "of the kind he [was] employed to perform," thereby satisfying the first element of the test this court articulated in *Cooke*.

{¶ 10}   With regard to the second element, Webb contends Higgs's act of negligently turning left occurred "substantially within the authorized limits of time and space" of his job. This is so, Webb reasons, because Higgs drove straight to the Hawk's Nest, as directed, without deviating or departing. Although Star Ex presented evidence that Higgs was not paid for his driving time, Webb nevertheless insists that the accident occurred *substantially* within the authorized limits of time and space because it occurred shortly after the paid safety meeting and on a road near the construction site.

{¶ 11}   Finally, with regard to the third element, Webb contends Higgs's act of driving to the Hawk's Nest was performed with an intent to serve Star Ex. In fact, Webb asserts that the only reason Higgs drove to the Hawk's Nest was to comply with Star Ex's direction.  Webb argues that "Star Ex cannot instruct Higgs to drive directly and immediately to Hawk's Nest and then claim no benefit from him having followed those instructions. Consequently, in the absence of any departure or deviation by Higgs from the instructions he received from Star Ex, reasonable minds could only conclude Higgs' act of driving to Hawk's nest was done with an intent to serve Star Ex." Webb also asserts that Star Ex obtained a "special benefit" from its employees driving their own cars to the work site by making them

easily transferrable from one location to the next.

{¶ 12}   Upon review, Webb has failed to persuade us that Higgs was acting in the scope of his employment, as a matter of law, at the time of the accident. The record contains testimony that Higgs and other Star Ex employees were not paid for the time spent traveling in their own cars from the morning safety meeting to the construction site. They began receiving pay only when they arrived at the construction site and began working. As   Star Ex correctly notes, "a work day is not necessarily continuous: it may have stopping and starting points, both in time and space. It is exactly analogous to working a split shift with personal time between the two periods of work." (Appellee's brief at 12-13).

{¶ 13}   Although Star Ex directed Higgs to travel to the Hawk's Nest, expected him to use his own vehicle, and provided parking in the "staging area," the evidence did not compel the jury to find a benefit to the company as a result of Higgs's commute other than making himself available to work. "[A]s a matter of law, a master is not liable for the negligence of his servant while the latter is driving to work at a fixed place of employment, where such driving involves no special benefit to the master other than the making of the servant's services available to the master at the place where they are needed." *Boch v. New York Life Ins. Co.*, 175 Ohio St. 458, 463, 196 N.E.2d 90 (1964); *see* also, *Lipps v. Kash*, 12th Dist. Clermont No. 2007-05-060, 2008-Ohio-2628, ¶ 11 ("The evidence does not support that the use of Kash's personal vehicle to travel to the Aberdeen job site conferred any special benefit to appellee. Instead, the vehicle simply served as the means by which Kash traveled to and from the job site in order to make his services available to appellee at the place where they were needed.").   This remains true "even though the employee may be reassigned to a different

workplace monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment." *Patidar v. Tri-State Renovations, Inc*., 10th Dist. Franklin No. 06AP-212, 2006-Ohio-4631, ¶ 10.

**{¶ 14}** Based on the evidence presented, the jury reasonably could have concluded that Higgs's job duties did not commence until his arrival at the Hawk's Nest construction site and that he was not acting in the scope of his employment while traveling there. Webb's assignments of error are overruled, and the judgment of the Miami County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

GRADY, P.J., concurs in judgment only.

Copies mailed to:

Jose M. Lopez
Christopher D. Clark
James D. Utrecht
Lance K. Oliver
Tina T. Pecuszok
Hon. Christopher Gee